**SO ORDERED.**

**SIGNED this 10 day of September, 2007.**

_____
**A. Thomas Small
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | |
|---|---|
| **IN RE:** | **CASE NO.** |
| **THOMAS JOHN STEINMILLER** | **06-01481-5-ATS** |
|      **DEBTOR** | |
| | |
| **WMS, INC.** | |
|      **Plaintiff** | **ADVERSARY PROCEEDING NO.** |
|      **v.** | **S-06-00166-5-AP** |
| **THOMAS JOHN STEINMILLER** | |
|      **Defendant.** | |

### MEMORANDUM OPINION

The trial of this adversary proceeding filed by WMS, Inc. pursuant to 11 U.S.C. § 523(a)(4) and (a)(6) to determine the dischargeability of a debt owed to the plaintiff by the debtor/defendant, Thomas John Steinmiller, was held on September 6, 2007, in Raleigh, North Carolina. For the reasons that follow, judgment will be entered in favor of the defendant.

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(I), which this court may hear and determine.

Mr. Steinmiller filed a petition for relief under chapter 7 of the Bankruptcy Code on September 20, 2006. At all times relevant to this adversary proceeding, WMS was the Alltell agent for North Carolina. Mr. Steinmiller was an Alltell retailer, acting through an agreement with WMS. Among the items sold by Mr. Steinmiller were prepaid wireless services, for which Mr. Steinmiller accepted funds from customers, Mr. Steinmiller used a code provided by WMS to activate the minutes, and Mr. Steinmiller was to pay those funds to WMS. WMS obtained the prepaid wireless codes through its own contractual relationships with Alltell and National Telemanagement Corporation ("NTC"), and WMS was required by contract to hold funds in trust until invoiced by NTC. Pl. Ex. 2, ¶ 1.

As of December 5, 2005, Mr. Steinmiller owed WMS $5,856.33 in monies he had collected in the sale of prepaid wireless. WMS contends that the failure to remit the funds constituted conversion, and that the debt is nondischargeable under § 523(a)(6). WMS further contends that Mr. Steinmiller was a fiduciary of WMS and his failure to remit the funds that belonged to WMS was a breach of that duty, rendering the debt nondischargeable under § 523(a)(4).

The testimony established that at the inception of the relationship between WMS and Mr. Steinmiller, Mr. Steinmiller earned commissions on sales of cellular phones and post-paid wireless services, and that any monies he collected for prepaid wireless services were simply deducted from his commission checks each month. As sales changed, the prepaid wireless services receipts were greater than the

2

commissions due, so that Mr. Steinmiller owed funds to WMS. At no time did WMS require Mr. Steinmiller to establish a separate bank account for the prepaid wireless proceeds, nor was there any mechanism for automated transmission of those funds to WMS. WMS relies upon the following provision in the agreement between WMS and Mr. Steinmiller to support its assertion that the funds were held in trust:

> Dealer [Steinmiller] agrees to pay promptly and on time any and all monies taken in as payments for airtime or activation fees associated with NTC prepaid wireless accounts controlled by WMS or for which WMS is the responsible party.

Pl. Ex. 3, ¶ 3.

There was no evidence that Mr. Steinmiller failed to report the sales of prepaid wireless or otherwise acted fraudulently. Mr. Steinmiller testified that the proceeds were put into his operating account, and were used to pay operating expenses. Because the funds were initially setoff from Mr. Steinmiller's commissions, he never established a detailed accounting system to determine what was owed to WMS. WMS agrees that there was no malice in the failure to turn over the funds, but nevertheless maintains that Mr. Steinmiller breached a fiduciary duty and converted the funds.

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." WMS admitted that there was no malice, so its cause of action under § 523(a)(6) must fail.

Section 523(a)(4) excepts from discharge a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Under different facts, WMS might have been able to prove that a fiduciary obligation was established, but in this case the intent of the parties was for Mr. Steinmiller to pay

WMS from his commissions, not to remit the sale proceeds as they were collected. No fiduciary relationship existed, and the debt is not nondischargeable pursuant to § 523(a)(4).

Based on the foregoing, the court concludes that the debt owed by Mr. Steinmiller to the plaintiff, WMS, Inc., in the amount of $5,856.33 is not excepted from discharge pursuant to 11 U.S.C. § 523(a)(4) or (a)(6). A separate judgment will be entered accordingly.

**END OF DOCUMENT**